The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

Baldemar **ARMENDARIZ,** Defendant-Appellant.

No. 82CA0240.

Colorado Court of Appeals, Div. III.

Dec. 22, 1983.

Rehearing Denied Jan. 12, 1984.

Certiorari Granted July 2, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Dolores S. Atencio, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Jody Sorenson Theis, Deputy State Public Defender, Denver, for defendant-appellant.

BERMAN, Judge.

Defendant, Baldemar Armendariz, appeals his convictions of second degree kidnapping, third degree assault, and second degree criminal trespass. We affirm.

Roxanne and Baldemar Armendariz separated in early 1980. In July of that year, the trial court issued a temporary decree of maintenance and support for their unborn child. Shortly before their child was born, a temporary restraining order [1] was issued preventing the defendant "from emotionally and physically molesting or disturbing the peace of Petitioner [Roxanne]" and excluding the defendant from Roxanne's home.

The record reveals that during the evening hours of November 28, 1980, the defendant parked his car outside of Roxanne's apartment and watched the apartment for about two hours. Shortly after he observed Roxanne on the stoop, kissing a man, he became enraged and broke through the apartment window, assaulted Roxanne and left, taking with him their four-month old son, Baldemar Armendariz, Jr.

The next day the defendant called Roxanne a number of times, asking her whether she would be willing to meet him in order to get the baby back. He refused to reveal his hiding place, and he threatened that she would never see her baby again if she got him in "any trouble with the police." A meeting was arranged for later that evening at the Brighton exit on I–25. When Roxanne drove to the meeting spot, a police detective was hiding in the trunk of her car. The defendant was arrested and the baby was subsequently found and returned to Roxanne.

The defendant posted bond of $10,000 on December 3, 1980. The defendant failed to appear at his preliminary hearing, and the bond was revoked. On May 26, after defendant was returned to the custody of the court, a second bond was set in the amount of $25,000.

During closing arguments of his trial in December, defendant admitted to the jury, through his attorney, that he was guilty of third degree assault and second degree criminal trespass. After trial, defendant was convicted of second degree kidnapping, third degree assault, and second degree criminal trespass.

## I.

Defendant first contends that the trial court did not have jurisdiction over the defendant because, after his bond was increased, it failed to bring him to trial within 90 days as required by § 16–4–103(2), C.R.S.1973 (1982 Cum.Supp.). We disagree.

Section 16–4–103(2), C.R.S.1973 (1982 Cum.Supp.) provides, in relevant part, as follows:

"Any defendant whose bail bond is revoked or increased under an order entered pursuant to this section and who remains in custody must be tried on the

---

1. Although the order issued by the trial court was denominated as a temporary restraining order because it was issued in a dissolution of marriage case, it is more properly called a temporary injunction. C.R.C.P. 65(h) specially provides that C.R.C.P. 65 "shall not apply to suits for dissolution of marriage ...." "The order ... was a continuing order which did not expire by its terms within ten days and was tantamount to a temporary injunction." *Freshpict Foods, Inc. v. Campos*, 30 Colo.App. 354, 492 P.2d 867 (1971).

charges on which the bail bond has been increased or revoked within ninety days after such order or within six months after his arraignment on such charges, whichever date is earlier."

*People v. Olds*, 656 P.2d 705 (Colo.1983) is dispositive here. In that case, a $1,500 personal recognizance bond was set on September 4, 1980. The defendant failed to appear at the preliminary hearing on September 18, and the bond was revoked. A new bond was set when the defendant was returned to Colorado on October 29. On December 11, defendant was arraigned. Our Supreme Court rejected defendant's argument that his speedy trial rights were violated under § 16-4-103(2), C.R.S.1973 (1982 Cum.Supp.), reasoning as follows:

"To construe the statute as the defendant would have us do would create an anomaly. The defendant's failure to appear at the September 18 preliminary hearing caused a forfeiture of his personal recognizance bond. His bond was cancelled and an arrest warrant was issued. When he was again arrested and brought back to the court on October 29, 1980, the court was required to set bail for the defendant.... The first bond of $1,500 was not continued and then modified; rather the first bond ceased to exist and was forfeited.

. . . .

Moreover, the trial court erred in holding that the defendant came within the terms of the statute. At the time of both bond hearings the defendant had not yet entered a plea in answer to the charges against him. Therefore, it would have been impossible for him to be tried within ninety days of the forfeiture of the first bond, becuase his arraignment did not occur until almost the entire ninety day period had passed. It is conceivable that if such a rule for all bond settings were applied, the time for speedy trial could run before the defendant's guilt was even put in issue, after his arrest but before arraignment on the charges. Therefore, we believe the bail modifica-

tions which are the subject of section 16-4-103(2) relate only to those bail proceedings which occur after arraignment, as do other speedy trial limitations." *People v. Olds, supra.*

■ Similarly, here, the defendant's failure to appear caused a forfeiture of his $10,000 bond. The $10,000 bond then "ceased to exist." *People v. Olds, supra.* Because the entry of the $25,000 bond cannot be deemed an increase of the former bond, defendant's speedy trial argument must fail.

■ Moreover, as in *People v. Olds*, "[a]t the time of both bond hearings the defendant had not yet entered a plea in answer to the charges against him." Thus, § 16-4-103(2) does not apply since it "relate[s] only to those bail proceedings which occur after arraignment ...." *People v. Olds, supra.*

## II.

Defendant next contends that the trial court erred in giving a standard "flight" instruction to the jury. However, we hold that, under the circumstances of this case, the giving of this instruction does not rise to the level of reversible error.

The trial court gave the following instruction regarding the inference to be drawn from flight:

"If you find from the evidence beyond a reasonable doubt that the crimes charged in the Information were committed by some person, and that immediately after such crimes were committed the defendant fled, such flight would be a circumstance, not sufficient in itself to establish the guilt of the defendant, but a circumstance which you may consider, in connection with all the other facts and circumstances proven at the trial, in determining the question of the guilt or innocence of the defendant. It is for you to determine from the evidence whether such flight was caused by a consciousness of guilt or by some other and innocent motive."

■ Although the flight instruction is disfavored because it may focus unduly on one item of evidence, "the giving of the instruction does not constitute reversible error if 'the defendant had reason to believe that he had committed a crime, that his identity was known, that his pursuit and apprehension would probably ensue, and that he fled or concealed himself for any length of time to frustrate his apprehension.'" *People v. Larson,* 194 Colo. 338, 572 P.2d 815 (Colo.1977), *citing Robinson v. People,* 114 Colo. 381, 165 P.2d 763 (1946).

■ All of the above factors are present here. The defendant had reason to believe he had committed a crime because he was aware of the restraining order which enjoined him from entering Roxanne's home. His identity was clearly known to his estranged wife. And, he concealed himself for approximately 24 hours because he knew that if he revealed his whereabouts, he would "get in trouble with the police." Therefore, it was not error to give the flight instruction in this case.

### III.

Defendant next argues that the evidence was insufficient to establish beyond a reasonable doubt that he was guilty of second degree kidnapping in the taking of his son. We disagree.

The second degree kidnapping statute, § 18–3–302(1), C.R.S.1973 (1978 Repl.Vol. 8) (1982 Cum.Supp.), provides, in relevant part, that:

"Any person who knowingly, forcibly, or otherwise seizes and carries any person from one place to another, without his consent and without lawful justification, commits second degree kidnapping."

Defendant argues that the prosecution did not establish that the baby was taken "without lawful justification" because, as its natural father, he had the legal right to "rescue his child from a negative environment."

■ We know of no kidnapping cases in Colorado involving a parent who has not been denied legal custody and has taken the child from the parent having physical custody. In the paucity of Colorado law on this specific issue, we note that the Colorado case closest to being on point is *Lee v. People,* 53 Colo. 507, 127 P. 1023 (1912). In *Lee,* the court held that a natural parent may be found guilty of kidnapping his own child if the child is taken from a person who has the right to custody by a court decree. However, here, there was no judicial decree of custody since the infant had not been born at the time the temporary injunction was issued. Where, as here, one parent has exclusive physical custody of the infant, and that physical custody, though not judicially ordered, is nonetheless not in violation of a court order or decree and is coupled with a support order, we hold that the legal right to physical custody is reposed in the custodial parent for the purpose of determining the application of the kidnapping statutes.

■ The standard for upsetting a jury verdict in criminal cases is "very strict"; and if the evidence, although conflicting, supports the jury's verdict of guilty, the verdict must be upheld. *People v. Noga,* 196 Colo. 478, 586 P.2d 1002 (1978). We hold that the lack of a formal custody decree in this case is not dispositive of the issue of lack of lawful justification. Rather, here, ample evidence supports a finding that the defendant's seizure and asportation of the four-month-old baby was "without lawful justification" and, thus, supports the jury's verdict of guilty on the charge of second degree kidnapping. Therefore, under *Noga,* we must uphold the guilty verdict as to this charge.

Specifically, we conclude that there are a number of facts in evidence which undergird the jury's finding of the defendant's lack of "lawful justification" in taking the baby. First, the mother had actual physical custody of the baby at the time of the kidnapping, and the defendant was subject to and complying with a support order for the child. This support order assumed continuing physical custody of the baby by the mother.

Second, beginning May 21, 1980, the defendant was subject to a court order enjoining him from having any contact with the mother. Nevertheless, there is substantial evidence in the record to indicate that, in his effort to take the baby from the premises, the defendant broke through a screen, shattered a window, brandished a knife with an eight to ten inch blade, and knocked the baby's mother to the floor, repeatedly kicking her in the head. Such actions are indeed consistent with a finding that the taking of the infant was not lawfully justified.

Third, the defendant did not have permission from the baby's natural mother to take the baby; yet, the defendant forcibly deprived her of her legal right to physical custody of her baby. This conduct further supports the jury's finding that the defendant's taking of the baby was not justified under the law.

Finally, there was no evidence whatsoever that the baby was living within a "negative environment" or was neglected or abused by the mother in any way. The fact that the baby was in good health while in the mother's care and the fact that the record shows that defendant held a knife to the baby's throat, threatening to kill the baby if the mother notified the police of his misdeeds, dispels defendant's claim that the baby's welfare constituted the "lawful justification" which motivated his actions. Rather, defendant's fear of being discovered by the police is probative of his knowledge of lack of lawful justification to take the baby.

■ While we freely admit that the evidence regarding several of these facts is conflicting, we cannot ignore the evidence which supports the jury's finding that defendant lacked lawful justification. That evidence permeates the record, and we hold that a jury could reasonably find, based on that evidence, that the defendant was guilty of second degree kidnapping.

■ There is no merit to defendant's further argument that a second element of the second degree kidnapping statute was not proven because "[t]here is no evidence that [the defendant's] baby did not consent to leaving the apartment with his father." It is obvious that a four-month old infant is incapable of consent and that the mother did not give consent on the infant's behalf.

Defendant's remaining contention of error is without merit.

Judgment affirmed.

KELLY, J., concurs.

TURSI, J., dissents.

TURSI, Judge, dissenting in part.

I dissent from that part of the majority opinion which affirms defendant's conviction of second degree kidnapping, a class 4 felony.

Second degree kidnapping is defined in § 18–3–302, C.R.S.1973 (1978 Repl.Vol. 8). The majority has cited subsection (1) thereof. However, the relevant subsection as applies to the facts of this case is subsection (2), which reads:

"Any person who takes, entices, or decoys away *any child not his own*, under the age of eighteen years with intent to keep or conceal the child from his parent or guardian commits second degree kidnapping." (emphasis supplied)

The General Assembly has addressed the problem created by a parent violating a lawful custodial order. Section 18–3–304(2), C.R.S.1973 (1978 Repl.Vol. 8) makes the violation of an order granting custody a class 5 felony.[1] However, to date, the General Assembly has not chosen to criminalize the act of one parent taking a child from the physical custody of another parent, absent a court order granting custody to the other parent.

The court order involved here is a temporary restraining order enjoining the defendant from molesting or disturbing the peace

1. Prior to the passage of § 18–3–304 this matter was treated as a misdemeanor. C.R.S.1963, 40– 2–45.

of Roxanne or her minor child by a previous marriage. Defendant correctly contends that absent a court order terminating or modifying his co-equal right to custody, there was no lawful prohibition against his exercise of custody over his son. *See* Annot., 77 A.L.R. 317. I know of no contrary authority.

Defendant called § 18–3–304(2), C.R.S. 1973 (1978 Repl.Vol. 8) to the attention of the trial court. However, since it is undisputed that defendant was not charged with, nor did he violate a custody order, the jury was not instructed on this charge. *Lee v. People*, 53 Colo. 507, 127 P. 1023 (1912) is in point. In *Lee*, the court relied upon a decree awarding exclusive custody to the mother.

Defendant also contends that the trial court erred in failing to give a clarifying supplemental instruction defining "without lawful justification." Although it was error to have instructed on second degree kidnapping in the first instance, this error was aggravated by the failure of the trial court to instruct on this material element when clarification was requested by the jury.

In *People v. Rex*, 636 P.2d 1282 (Colo. App.1981), interpreting § 18–3–302, we held (1) that lack of lawful justification is a material element of the charge of second degree kidnapping which requires proof beyond a reasonable doubt and, (2) that we must strictly construe the statute in the light most favorable to the accused. Although defendant failed to submit such an instruction prior to argument, he did so when the jury requested clarification on this matter.

Where the concept of a material element to be considered by the jury is legal, rather than one of common usage, a definitional instruction must be given. *People v. Hoehl*, 193 Colo. 557, 568 P.2d 484 (1977). *See also People v. Hardin*, 199 Colo. 229, 607 P.2d 1291 (1980). A trial court has the duty to go beyond the "mere abstract statements or legal definitions" when necessary to guide the jury toward an intelligent understanding of the legal and factual

issues it is to resolve. *Tyler v. Dowell, Inc.*, 274 F.2d 890 (10th Cir.1960). Further, failure to give such a clarifying instruction when properly requested is reversible error. *Walsh v. Miehle-Goss-Dexter, Inc.*, 378 F.2d 409 (3rd Cir.1967); 9 *C. Wright & A. Miller, Federal Practice & Procedure* § 2555 (1971).

I would therefore reverse the conviction of second degree kidnapping and leave standing the convictions of third degree assault and second degree criminal trespass.