Frankie GERMANY, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 99–78.

Supreme Court of Wyoming.

March 16, 2000.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; and Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Robin Sessions Cooley, Senior Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

MACY, Justice.

Appellant Frankie Germany appeals from the judgment and sentence entered by the trial court after a jury found him guilty of burglary and conspiracy to commit burglary.

We affirm.

### ISSUES

Germany presents the following issues for our consideration:

ISSUE I.

Was Appellant denied his constitutional right to a speedy trial under the United States Constitution, Sixth Amendment, and the Wyoming State Constitution, art. 1 § 10 when the trial court denied his motion to dismiss for violating W.R.Cr.P. 48?

ISSUE II.

Did the trial court abuse its discretion when it allowed the admission of evidence regarding a fabricated alibi witness who testified in another case under W.R.E. 404(b) and the evidence of a prior burglary which was not unique nor peculiar?

ISSUE III.

Did the trial court improperly g[i]ve a flight instruction when identity was the only issue and improperly direct a verdict on an element of the crime?

### FACTS

In early October 1996, Germany and his ex-wife, Tamara Foster, traveled from Los Angeles, California, to Cheyenne in a rented car. Germany informed Foster that they were going to Cheyenne because "Wyoming owe[d] him." They arrived in Cheyenne on October 3, 1996, and checked into a motel under assumed names. Germany and Foster then drove around the city, looking for a jewelry store. They located Burri Jewelers, which was closed at the time. Germany got out of the car and looked into the store windows in the front and back of the building. Later that night, Germany and Foster drove from the jewelry store to the motel several times, searching for the best route between the two locations. They subsequently returned to their motel room and placed wire hangers through the tops of three pillowcases to make the pillowcases stand open.

In the early morning hours of October 4, 1996, Germany and Foster returned to Burri Jewelers and parked behind the building. Germany broke one of the store windows with a crowbar, and the couple crawled into the store through the broken window. Germany broke the jewelry display cases with the crowbar, and he and Foster scooped the jewelry into the pillowcases.

When Germany broke the store window, he activated an alarm which summoned law enforcement officers to the jewelry store. Germany and Foster were leaving the store when an officer arrived. Germany ran to their car, but Foster was tackled by the officer. Germany drove away in the car and, in the process, ran over Foster's knee.

Germany checked out of the motel room at approximately 4:00 a.m. on October 4, 1996.

Foster was arrested, and she gave a statement to the police, implicating Germany in the burglary. Germany was arrested on December 10, 1997, and he was charged with aggravated burglary and conspiracy to commit burglary. The trial court held a jury trial on July 7, 1998, through July 10, 1998. Germany insisted that he was in Las Vegas, Nevada, when the burglary occurred and that Foster had wrongly accused him of the crimes. The jury found him not guilty of aggravated burglary but found him guilty of simple burglary and conspiracy to commit burglary. The trial judge entered a judgment consistent with the jury's verdict and sentenced Germany to the Wyoming State Penitentiary. Germany subsequently perfected his appeal to the Wyoming Supreme Court.

## DISCUSSION

### A. Speedy Trial

Germany contends that the trial court violated his right to have a speedy trial when it continued his trial to a date more than 120 days after the date of his arraignment. The state claims that the trial court complied with the requirements of W.R.Cr.P. 48. We agree with the state.

W.R.Cr.P. 48(b) protects a criminal defendant's constitutional right to receive a speedy trial. *Newport v. State,* 983 P.2d 1213, 1217 (Wyo.1999). W.R.Cr.P. 48(b) states in pertinent part:

(b) *Speedy trial.—*

(1) It is the responsibility of the court, counsel and the defendant to insure that the defendant is timely tried.

(2) A criminal charge shall be brought to trial within 120 days following arraignment unless continued as provided in this rule.

(3) The following periods shall be excluded in computing the time for trial:

(A) All proceedings related to the mental illness or deficiency of the defendant;

(B) Proceedings on another charge;

(C) Delay granted by the court pursuant to paragraph (4) or (5);

(D) The time between the dismissal and the refiling of the same charge; and

(E) Delay occasioned by defendant's change of counsel or application therefor.

(4) Continuances not to exceed six months from the date of arraignment may be granted by the trial court as follows:

(A) On motion of defendant supported by affidavit; or

(B) On motion of the attorney for the state or the court if:

(i) The defendant expressly consents;

(ii) The state's evidence is unavailable and the prosecution has exercised due diligence; or

(iii) Required in the due administration of justice and the defendant will not be substantially prejudiced; and

(C) If a continuance is proposed by the state or the court, the defendant shall be notified. If the defendant objects, the defendant must show in writing how the delay may prejudice the defense.

The trial court arraigned Germany on January 13, 1998, and scheduled his trial to begin on March 9, 1998. The court made it clear to the parties, however, that the trial setting was stacked and Germany's trial was scheduled behind a number of other trials which were also set for that day. The order setting the trial specifically addressed the possibility that Germany's trial would not be held on March 9, 1998:

This case is hereby, and one or more others have been or may be[,] set for jury trial on the 9 th day of **March, 1998, at 9:00 a.m.** If on that date, this case and one or more others remain for trial (have not been disposed of by plea or agreement for plea) one will go to trial and the others will be continued, pursuant to Rule 48(b), W.R.Cr.P.

Between the date of this Order and the trial date, the attorneys for the State and the Defendant shall confer with one another and Louise Anderson of the Court to determine which of the remaining cases will be tried on the trial date above and which will be continued.

If any subsequent trial date to which the captioned case is continued is more than 120 days after the date of arraignment, and if the attorney for the defendant objects on the basis of Rule 48, the attorney shall forthwith file and serve on other counsel and the Judge, a statement of how, if at all, the delay may prejudice the defense. If prejudice is shown, counsel and the Court will confer concerning an alternative setting.

The prosecutor notified the trial court and the defense counsel on February 27, 1998, that Germany's trial would probably need to be rescheduled because other cases which were scheduled ahead of Germany's on March 9, 1998, were going to proceed to trial. The trial judge indicated that he and the attorneys needed to confer, in a timely fashion, about an alternate trial date.

On April 30, 1998, the trial court entered an order scheduling Germany's trial to begin on June 8, 1998. The defense counsel filed a motion to dismiss on May 13, 1998, stating that Germany's constitutional right to receive a speedy trial had been violated. The grounds for the motion to dismiss are somewhat obscure because the motion was primarily concerned with issues involving Germany's extradition from California and the delay in bringing him to Cheyenne to face the charges in this case. At a hearing on May 27, 1998, the defense counsel notified the trial court that he could not attend a trial on June 8, 1998. The trial court reset Germany's trial for July 7, 1998, and remarked:

There have been a number of previous trial settings in this matter which simply couldn't take place because there was not—it wasn't possible in view of the other matters facing the Court, and pursuant to the appropriate rule the matter was reset from time to time. But we are now at a point where I think we have to have an absolutely firm trial date, and from the Court's point of view, that will be the 7 th of July.

Germany filed a pro se motion objecting to the trial court's decision to reset the trial date for July 7, 1998. The trial began, as scheduled, on July 7, 1998.

One hundred seventy-four days passed between Germany's arraignment and his trial. In order to determine whether W.R.Cr.P. 48(b) was violated, we must look at the reasons for the delay in bringing him to trial. The parties agree that the twenty-nine days between June 8 and July 7, 1998, must be excluded from the calculation of time under W.R.Cr.P. 48(b) because the continuance was granted pursuant to the defense attorney's request.

The trial court changed the trial date from March 9, 1998, to June 8, 1998, because other cases, which were scheduled ahead of Germany's case, were going to be tried on March 9, 1998. The first continuance was, therefore, "[r]equired in the due administration of justice" because of the crowded nature of the trial court's docket. W.R.Cr.P. 48(b)(4)(B)(iii); *see also McDaniel v. State*, 945 P.2d 1186, 1187 (Wyo.1997). The trial court's decision to grant the first continuance was appropriate, and the court complied with the time limitations set out in W.R.Cr.P. 48(b)(4) because Germany's trial was held within six months after his arraignment.

Germany also failed to make an adequate showing that he was prejudiced by the pre-trial delays. W.R.Cr.P. 48(b)(4)(C) provides that, if a defendant objects to a continuance, he must show in writing how the delay will prejudice his defense. Germany filed several motions, claiming his constitutional right to receive a speedy trial had been violated. His early motions pertained primarily to his claim that his constitutional rights were violated when, after his extradition from California, the authorities took him to the Wyoming State Penitentiary to attend a parole violation hearing rather than bringing him directly to Cheyenne to face the charges in this case. Germany's concerns about the delay in bringing him to Cheyenne are not relevant to our W.R.Cr.P. 48(b) analysis because he had not been arraigned at the time the alleged delays occurred. In his later speedy trial filings, Germany complained about the amount of time that transpired after his arraignment while he was awaiting trial. He did not, however, explain precisely how he was prejudiced by the delay. He said he lost track of alibi witnesses, but he

made that claim of prejudice in association with the manner of his extradition. Furthermore, he was able to present evidence at trial in support of his alibi. Even at the appellate stage, Germany does not set out specifically how he was prejudiced by the delay in commencing his trial.

Germany directs us to *Detheridge v. State,* 963 P.2d 233 (Wyo.1998), in support of his claim that the trial court should have dismissed his case because his right to receive a speedy trial was violated. In *Detheridge,* the defendant's initial trial date passed, and neither the prosecution nor the trial court made a meaningful effort to reset the trial date or to secure a continuance in accordance with W.R.Cr.P. 48(b). 963 P.2d at 234. In this case, by contrast, the prosecutor and the trial court were concerned about the delays, and the trial court took appropriate steps to ensure that Germany's right to receive a speedy trial was protected. The facts of this case do not evince the callous disregard of the speedy trial rule illustrated in *Detheridge.* Consequently, the *Detheridge* ruling is not pertinent to our decision here.

We conclude that the trial court complied with the terms and spirit of W.R.Cr.P. 48(b) in scheduling Germany's trial. Germany's right to receive a speedy trial was not violated in this case.

## B. Prior Bad Acts

■ Germany burglarized a jewelry store in Laramie in 1993. At the preliminary hearing in that case, Germany presented a witness who testified that Germany was in Omaha, Nebraska, at the time of the burglary. Germany later admitted that he had burglarized the Laramie jewelry store and pleaded guilty to the crime.

Germany contends that the trial court erred by allowing evidence of the Laramie burglary and his presentation of a fabricated alibi to be admitted at his trial in this case. The state argues that the trial court properly ruled that the evidence was admissible. We agree with the state.

■ W.R.E. 404(b) governs the admissibility of evidence of a defendant's other bad acts:

(b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This Court generally defers to the trial court's decision concerning the admissibility of other bad acts evidence; we will reverse the trial court's decision only if the court abused its discretion. *Rigler v. State,* 941 P.2d 734, 737 (Wyo.1997).

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, we must decide the ultimate issue of whether or not the court could have reasonably concluded as it did.

*Kenyon v. State,* 986 P.2d 849, 851 (Wyo. 1999) (citation omitted).

Germany filed a motion requesting that the prosecution give him notice if it intended to use evidence of his other bad acts. The prosecution notified him that it intended to offer evidence of the Laramie burglary. At the hearing on the admissibility of the other bad acts evidence, the prosecutor argued that the evidence of the Laramie burglary should be admitted for the purpose of identifying Germany as the perpetrator of the Cheyenne burglary because the two burglaries shared many similar characteristics. The trial court deferred its ruling on the issue and heard additional argument at trial. The prosecutor outlined the other bad acts evidence during a hearing held at Germany's trial:

Specifically, as it relates to this case, the 404(b) commonality factors would be Detective Bury would state [Germany, Foster, and two other persons] arrived [in Laramie] from Los Angeles in a rented car, that they checked into a motel room under the name of—or Tamara Foster checked them into the motel room; that they left the motel room after taking the pillowcases; that they, Mr. Germany, by his own admission to this crime, by the way, on May 4, 1994, went downtown, obvi-

ously busted out the lower glass portion, went inside, broke out the display cases, scooped the jewelry into the pillow cases, fled the scene, went back to the motel, hastily checked out and left.

When later confronted by Detective Bury, he claims alibi, and he threatened witnesses against him. There was like 12 factors there that are virtually identical to the facts in this case. All of that goes to show identification.

The trial court concluded that evidence of Germany's 1993 burglary of the Laramie jewelry store and his subsequent attempt to establish an alibi were admissible to prove identity.

Because Germany professed his innocence in the case at bar and claimed he was in Las Vegas, Nevada, when the Cheyenne burglary took place, identity of the perpetrator was at issue during the trial. Evidence of an accused's other bad acts may be admissible for the purpose of proving identity. W.R.E. 404(b); *Johnson v. State*, 936 P.2d 458, 463 (Wyo.1997).

"The probity of evidence of other crimes where introduced for this purpose depends upon both the uniqueness of the *modus operandi* and the degree of similarity between the charged crime and the uncharged crime. Of course, it is not necessary that the charged crime and the other crimes be identical in every detail. But they must possess a common feature or features that make it very likely that the unknown perpetrator of the charged crime and the known perpetrator of the uncharged crime are the same person. The more unique each of the common features is, the smaller the number that is required for the probative value of the evidence to be significant. But a number of common features of lesser uniqueness, although insufficient to generate a strong inference of identity if considered separately, may be of significant probative value when considered together."

*Pena v. State*, 780 P.2d 316, 322 (Wyo.1989) (quoting *United States v. Myers*, 550 F.2d 1036, 1045 (5th Cir.1977) (citation omitted)); *see also Johnson*, 936 P.2d at 463.

Some of the similarities between the Laramie and Cheyenne burglaries do not necessarily make the crimes unique because they are common to most "smash and dash" type burglaries; .e.g., breaking out store windows, collecting the stolen goods, and attempting to flee from law enforcement officers. There were, however, enough unique similarities to mark the two burglaries as the work of the same person. The characteristics that are peculiar to Germany's burglaries, include: The co-conspirators traveled in rented cars; they checked into local motels shortly before the burglaries were committed; they used wired pillowcases which were stolen from the motels to collect the jewelry; Germany and/or his co-conspirators checked out of the motels at odd times, either late at night or very early in the morning, shortly after the crimes were committed; and Germany used witnesses to attempt to establish that he was in another state at the time the crimes were committed. Comparing the characteristics of the Laramie and Cheyenne burglaries, we conclude that the crimes were sufficiently similar to justify admission of the evidence of the Laramie burglary for the purpose of proving Germany's identity as the perpetrator in the Cheyenne burglary.

Germany argues that his presentation of a fabricated alibi in the Laramie case should be considered to be a separate bad act and that the trial court erred by allowing evidence of the fabricated alibi to be admitted at the trial in this case.[1] Germany did not present this aspect of his argument to the trial court when he objected to the introduction of his other bad acts. The trial court apparently considered the fabricated alibi to be part and parcel of the Laramie burglary. The use of alibi witnesses, who stated that Germany was in other states when the burglaries were committed, was a means by which Germany attempted to avoid criminal

---

1. Germany also claims that the trial court violated W.R.Cr.P. 12.1(f) when it allowed evidence of the fabricated alibi to be admitted. He did not, however, present this argument to the trial court.

We refuse, therefore, to consider it on appeal. *Koopman By and Through Koopman v. Fremont County School District No. 1*, 911 P.2d 1049, 1053 n. 2 (Wyo.1996).

responsibility for his burglaries. The elaborate nature of the concocted alibis was a unique part of his *modus operandi.* We cannot fault the trial court for allowing evidence of Germany's attempt to establish an alibi for the Laramie burglary to be presented at the trial in this case.

## C. Jury Instructions

Germany maintains that the trial court erred when it instructed the jury. The instructions that he takes issue with are: Instruction No. 11, which concerned his flight from authorities; and Instruction No. 3, which defined the term "larceny." The state argues that the instructions complied with the law, and we agree.

■■■ The trial court has a duty to instruct the jury concerning the law applicable to the issues actually raised by the evidence. *Hernandez v. State,* 976 P.2d 672, 674 (Wyo. 1999). The trial court has "wide latitude in instructing the jury; and as long as the instructions correctly state the law and the entire charge to the jury adequately covers the issues, reversible error will not be found." *Baier v. State,* 891 P.2d 754, 756 (Wyo.1995). We consider the jury charge in its entirety to determine whether the instructions correctly stated the law and adequately covered the issues. *Hernandez,* 976 P.2d at 674.

■■■ Germany objected to Instruction No. 11—the "flight instruction." The trial court overruled his objection and gave the instruction to the jury. Instruction No. 11 stated: "Flight, by itself, is not sufficient to establish the guilt of the defendant. But it may be considered as a circumstance to be considered with other factors as tending to show a consciousness of guilt." Germany claims that a "flight instruction" should not be given when the identity of the perpetrator is at issue. He directs us to a Colorado Court of Appeals case entitled *People v. Armendariz,* 684 P.2d 252 (Colo.Ct.App.1983), *aff'd in part and rev'd in part on other grounds,* 711 P.2d 1268 (Colo.1986) (en banc), as support for his contention. The *Armendariz* decision does not, however, support his argument because the identity of the perpetrator was not at issue in that case. 684 P.2d at 256.

A California Supreme Court case entitled *People v. Mason,* 52 Cal.3d 909, 277 Cal. Rptr. 166, 802 P.2d 950 (in bank), *cert. denied,* 502 U.S. 879, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991), is applicable to the issue presented here. Like Germany, Mason provided alibis for the times some of the crimes he was charged with were committed. 277 Cal.Rptr. 166, 802 P.2d at 969. As part of its charge to the jury, the trial court gave an instruction concerning how the jury should treat evidence that the defendant fled from the authorities. *Id.* Mason argued, on appeal, that the flight instruction should not have been given because the identity of the perpetrator of the crimes was at issue. *Id.* The California Supreme Court presented the following pertinent discussion in response to Mason's argument:

> If there is evidence identifying the person who fled as the defendant, and if such evidence "is relied upon as tending to show guilt," then it is proper to instruct on flight. "The jury must know that it is entitled to infer consciousness of guilt from flight and that flight, alone, is not sufficient to establish guilt. The jury's need to know these things does not change just because identity is also an issue. Instead, such a case [only] requires the jury to proceed logically by deciding first whether [the person who fled] was the defendant and then, if the answer is affirmative, how much weight to accord to flight in resolving the other issues bearing on guilt. The jury needs the instruction for the second step."

*Id.* (quoting *People v. London,* 206 Cal. App.3d 896, 903, 254 Cal.Rptr. 59 (1988)); *see also People v. Jones,* 53 Cal.3d 1115, 282 Cal.Rptr. 465, 811 P.2d 757 (1991) (in bank), *cert. denied,* 503 U.S. 942, 112 S.Ct. 1491, 117 L.Ed.2d 631 (1992).

In the case at bar, Foster identified Germany as the perpetrator of the crime and the person who fled from the authorities, and the prosecution relied on her testimony as tending to show Germany's guilt. We believe, like the California Supreme Court did, that a jury would consider the entire jury charge and employ its common sense to reach the

conclusion that it should consider the relevance of Germany's flight only if it first identified him as the person who fled. We conclude, therefore, that a flight instruction is not necessarily improper simply because the identity of the perpetrator is at issue. The trial court properly informed the jury in Instruction No. 11 about the significance of Germany's flight from the authorities.

■ Germany also complains that, in Instruction No. 3, the trial court improperly directed a verdict against him on an element of burglary. Germany did not, however, object at trial to Instruction No. 3. We, therefore, apply our plain error standard in reviewing his claim on appeal. "Plain error exists when 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him." *Sandy v. State*, 870 P.2d 352, 358 (Wyo.1994); *see also Yetter v. State*, 987 P.2d 666, 668 (Wyo.1999).

Instruction No. 2 listed the elements of aggravated burglary as:

    1. On or about the 4th day of October, 1996

    2. In Laramie County, Wyoming

    3. The defendant, Frankie Germany

    4. Without authority

    5. Entered a building

    6. With intent to commit larceny or a felony therein, and

    7. In the course of committing the acts in elements 5 and 6 was armed with a deadly weapon or inflicted bodily injury to Tamara Foster.

Instruction No. 3 further defined the intent element of the crime:

    One element of the crime of burglary requires proof of specific intent. The state must prove beyond a reasonable doubt that the defendant entered the building without authority *and* that he did that act with the intent to commit larceny or another felony therein. Breaking the display cases and stealing jewelry would constitute larceny.

It is for you to determine whether he did the act and if so, whether he did it with the required intent.

Germany maintains that, by instructing the jury that "[b]reaking the display cases and stealing jewelry would constitute larceny," the trial court relieved the prosecution of its burden of establishing each element of the offense beyond a reasonable doubt.

■ Germany has satisfied the first element of the plain error standard because the record is clear about the instruction he alleges is incorrect. We turn, therefore, to the question of whether or not the trial court transgressed a clear and unequivocal rule of law. A trial court may not give an instruction which directs the jury to find that an element of the crime has been established because such an instruction would unconstitutionally relieve the prosecution of its burden to prove each of the essential elements of the crime. *See Huff v. State*, 992 P.2d 1071, 1074 (Wyo.1999); *Harley v. State*, 737 P.2d 750, 754 (Wyo.1987).

Instruction No. 3 did not compel the jury to find that the intent element of burglary had been established in this case. The trial court simply instructed the jury that breaking the display cases and stealing jewelry would fall within the definition of larceny. It did not tell the jury it was required to find that Germany did those things or entered the building with the intent to commit those acts. In fact, the last sentence of Instruction No. 3 specifically informed the jurors that it was for them to determine whether Germany did the act and, if he did, whether he acted with the requisite intent. The trial court did not violate a clear and unequivocal rule of law when it presented Instruction No. 3 to the jury.

Affirmed.