**Wayne R. ANDERSON,**
**Plaintiff-Appellant,**

**v.**

**Willow L. CRAMLET, the Arvada**
**Sentinel, and Donald Goreham,**
**Defendants-Appellees.**

**No. 85–1026.**

United States Court of Appeals,
Tenth Circuit.

April 29, 1986.

Wayne R. Anderson, pro se.

Larry N. Harris, Donald E. Cordova, P.C., Denver, Colo., and Greg Fasing, Fasing and Fasing, P.C., Denver, Colo., for defendant-appellee Willow L. Cramlet.

Charles E. Weaver, Wood, Ris & Hames, P.C., Denver, Colo., for defendants-appellees The Arvada Sentinel and Donald Goreham.

* Honorable Clarence A. Brimmer, Chief Judge, United States District Court for the District of

Before McKAY and SETH, Circuit Judges, and BRIMMER, District Judge.*

McKAY, Circuit Judge.

After examining the briefs and appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 10(e). The appeal is therefore ordered submitted without oral argument.

In this diversity action, Wayne Anderson, *pro se,* appeals from the district court's grant of summary judgment for defendants. Mr. Anderson contends that genuine issues of material fact exist as to whether certain allegedly defamatory statements in a "letter to the editor" published in the *Arvada Sentinel* were substantially true.

Mr. Anderson and his wife, Willow Cramlet, separated without going through legal proceedings and agreed informally that Ms. Cramlet would take care of their son, Eland, but that Mr. Anderson could take him for occasional overnight visitations. During one such visitation, Mr. Anderson took his son to Texas without Ms. Cramlet's consent. For six weeks, Ms. Cramlet tried to locate Mr. Anderson and Eland. When she finally located Eland in Texas, she obtained from the state district court for Jefferson County, Colorado, an order directing that Eland be returned to her in Colorado. On the basis of that order, she obtained a writ of habeas corpus from the state district court for Harris County, Texas, compelling Mr. Anderson to return Eland to her. After Mr. Anderson returned Eland, the Colorado state court ordered him not to contact Ms. Cramlet or Eland without the court's permission.

Thereafter, as part of divorce proceedings involving Mr. Anderson and his wife, the Colorado state court awarded Ms. Cramlet custody of Eland, and granted Mr. Anderson limited visitation privileges. Mr. Anderson again took Eland, this time in

Wyoming, sitting by designation.

violation of the custody order, and kept him hidden from and out of touch with Ms. Cramlet for more than three years.

Shortly after taking Eland, Mr. Anderson wrote a letter to television talk show host Phil Donahue asking to be a guest on Mr. Donahue's nationally televised program. Mr. Anderson wrote, in pertinent part, "I am a fugitive father—I kidnapped (terminology not my own) my son.... I would hope you would be willing to present the other side of child snatching: the side that never gets defended." Record, vol. 1, at 26. A few months later, Mr. Anderson, wearing a disguise, appeared on the Donahue show. During the show, Mr. Donahue asked Mr. Anderson, "You actually kidnapped your own child?" Mr. Anderson replied, "Yes, I did." Record, vol. 1, at 29.

Ms. Cramlet, who happened to be watching the show, immediately recognized her former husband. She sued Mr. Donahue, the company that produced the show, and others in the United States District Court for the District of Colorado. A lengthy jury trial ended with a hung jury. The case was later retried, and the second jury returned a verdict for Ms. Cramlet. Both trials attracted national television, radio, and newspaper coverage, which widely publicized Mr. Anderson's identity and his efforts to obtain custody of his son.

While Eland was still with his father, the *Arvada Sentinel* published a "letter to the editor" written by Ms. Cramlet. The letter criticized the state trial judge who had presided over the Anderson/Cramlet divorce proceedings for his handling of two cases. Without referring to Mr. Anderson or the Anderson/Cramlet divorce proceedings, the letter stated in pertinent part:

In one instance a 3-year-old boy was ordered to be sent on unsupervised visits with his father even though the child had already been kidnapped once before, the father had no place of residence—stating that he was living here and there in motel rooms. The father had no employment, and the father admitted in court that he had stated that he would kidnap the child again.

The father has also been described by a psychiatrist as having an extreme personality disorder bordering on being a psychopath. Within two months of the last court hearing, the child was kidnapped and has still not been found. The child has been gone nearly three years.

Record, vol. 1, at 25.

Eventually, Eland was discovered in Tulsa, Oklahoma, with his father. Mr. Anderson was charged with "Violation of Custody," a felony under Colorado state law. Colo.Rev.Stat. § 18-3-304 (1973). He pleaded guilty and was placed on probation.

Thereafter, Mr. Anderson brought this action against Ms. Cramlet and the *Arvada Sentinel*, alleging that Ms. Cramlet's letter defamed him. He sought $1.4 million in compensatory damages and $2 million in punitive damages. The district court granted defendants' motion for summary judgment on the basis that the allegedly defamatory statements in Ms. Cramlet's letter were substantially true. The district court did not reach the question whether Mr. Anderson is a "public figure" with respect to the child custody dispute or whether defendants acted with "actual malice."

■ Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." ** Fed.R.Civ.P. 56; *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir.1984). In determining whether there is

---

** The Supreme Court has recognized that the expense involved in defending meritless defamation suits may have a chilling effect on First Amendment rights. *Time, Inc. v. Hill*, 385 U.S. 374, 389, 87 S.Ct. 534, 542, 17 L.Ed.2d 456 (1967). Some lower courts have suggested that, because of this potential chilling effect, summary judgment is especially appropriate in defamation cases. *See Southard v. Forbes*, 588 F.2d 140, 146 (5th Cir.1979); *Schuster v. U.S. News and World Report, Inc.*, 602 F.2d 850, 855 (8th Cir.1979); *Anderson v. Stanco Sports Library, Inc.*, 542 F.2d 638, 641 (4th Cir.1976); *Treutler v. Meredith Corp.*, 455 F.2d 255, 257 n. 1 (8th Cir.1972); *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 864–65 (5th Cir.1970); *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C.Cir. 1966), *cert. denied*, 385 U.S. 1011, 87 S.Ct. 708,

a genuine issue of material fact, we must apply the substantive law of Colorado. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Ando v. Great Western Sugar Co.*, 475 F.2d 531, 534 (10th Cir.1973). "Substantial truth" is an affirmative defense to a defamation action under Colorado state law. *See Colorado Jury Instructions 2d, Civil*, 22:14. In *Gomba v. McLaughlin*, 180 Colo. 232, 504 P.2d 337, 338–39 (1972) (en banc), the Supreme Court of Colorado explained the defense as follows:

> A defendant asserting truth as a defense in a libel action is not required to justify every word of the alleged defamatory matter; it is sufficient if the substance, the gist, the sting, of the matter is true. *Heuer v. Kee*, 15 Cal.App.2d 710, 59 P.2d 1063 (1936); Prosser, Law of Torts, *supra*.
>
> The question, a factual one, is whether there is a substantial difference between the allegedly libelous statement and the truth; or stated differently whether the statement produces a different effect upon the reader than that which would be produced by the literal truth of the matter.

*Id.* at 339.

Mr. Anderson specifically alleges that four statements in Ms. Cramlet's letter to the *Arvada Sentinel* are defamatory. The first statement is: "[T]he child had already been kidnapped once before...." Record, vol. 1, at 25. Mr. Anderson admits that the first time he took Eland, he did so without Ms. Cramlet's consent. He contends, however, that this act did not constitute "kidnapping."

■ The district court concluded that Mr. Anderson violated Colo.Rev.Stat. § 18–3–304 (1973) when he took Eland the first time and that the description of this act as "kidnapping" was therefore substantially true. Colo.Rev.Stat. § 18–3–304 (1973), entitled "Violation of Custody," is found in the Colorado Criminal Code under the section entitled "Kidnapping." Subsection (2) of that statute provides:

> Any parent or other person who violates an order of any district or juvenile court of this state, granting the custody of a child under the age of eighteen years to any person, agency, or institution, with the intent to deprive the lawful custodian of the custody of a child under the age of eighteen years, commits a class 5 felony.

Initially, we note that the district court apparently erred in determining that Mr. Anderson violated Colo.Rev.Stat. § 18–3–

17 L.Ed.2d 548 (1967). More recently, other courts have rejected this notion, treating defamation actions, for procedural purposes, no differently than other cases. *See Lavin v. New York News, Inc.*, 757 F.2d 1416, 1419 (3rd Cir. 1985); *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 917 (6th Cir.1982); *Clark v. American Broadcasting Companies, Inc.*, 684 F.2d 1208, 1212 (6th Cir.1982); *Yiamouyiannis v. Consumers Union of United States*, 619 F.2d 932, 939–40 (2d Cir.), *cert. denied*, 449 U.S. 839, 101 S.Ct. 117, 66 L.Ed.2d 46 (1980). The neutral approach taken by these courts finds some support in the Supreme Court's opinion in *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979). In footnote 9 of *Hutchinson*, the Court commented on the district court's statement that summary judgment might be the rule rather than the exception in determining whether an adequate showing of "actual malice" has been made:

> Considering the nuances of the issues raised here, we are constrained to express some doubt about the so-called "rule." The proof of

"actual malice" calls a defendant's state of mind into question, *New York Times Co. v. Sullivan*, 376 U.S. 254 [84 S.Ct. 710, 11 L.Ed.2d 686] (1964), and does not readily lend itself to summary disposition. See 10 C. Wright & A. Miller, Federal Practice and Procedure § 2730, pp. 590–592 (1973). *Cf. Herbert v. Lando*, 441 U.S. 153 [99 S.Ct. 1635, 60 L.Ed.2d 115] (1979). In the present posture of the case, however, the propriety of dealing with such complex issues by summary judgment is not before us.

Although footnote 9 in *Hutchinson* states some "doubt" about the supposed "rule" favoring summary judgment on the issue of "actual malice," it does not address the question whether summary judgment is favored in defamation cases where "actual malice" is not involved. Until the Supreme Court provides more explicit guidance on this issue, we will continue to apply Rule 56 as it is written, without preference for either granting or denying summary judgment in defamation cases.

304 (1973) when he took Eland the first time. In *People v. Armendariz*, 684 P.2d 252, 257–58 (Colo.App.1983), Judge Tursi stated in his dissenting opinion:

The General Assembly has addressed the problem created by a parent violating a lawful custodial order. Section 18–3–304(2), C.R.S. 1973 (1978 repl. vol. 8) makes the violation of an order granting custody a class 5 felony. [footnote omitted]. However, to date, the General Assembly has not chosen to criminalize the act of one parent taking a child from the physical custody of another parent, absent a court order granting custody to the other parent.... Defendant correctly contends that absent a court order terminating or modifying his co-equal right to custody, there was no lawful prohibition against his exercise of custody over his son. *See* Annot., 77 A.L.R. 317. I know of no contrary authority.

Since it is undisputed that no custody order had been entered the first time Mr. Anderson took Eland, it appears he did not violate Colorado's "Violation of Custody" statute.

■ Nonetheless, we believe that, in the popular sense of the word, Ms. Cramlet's letter truthfully and accurately described Mr. Anderson's conduct as "kidnapping." Other courts have held that "technical errors in legal terminology and reports of matters involving violation of the law are of no legal consequence." *Hovey v. Iowa State Daily Publication Board, Inc.*, 372 N.W.2d 253, 255 (Iowa 1985). *See Simonson v. United Press International, Inc.*, 654 F.2d 478, 481–82 (7th Cir.1981) ("rape" used to describe sexual assault); *Brueggemeyer v. Associated Press*, 609 F.2d 825, 826 (5th Cir.1980) (exaggerated reports of amounts of court-ordered restitution); *Orr v. Argus-Press Co.*, 586 F.2d 1108, 1112 (6th Cir.1978), *cert. denied*, 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979) ("swindle" substituted for "defraud"). As the *Restatement (Second) of Torts* § 581A comment f (1977) explains:

[M]any charges are made in terms that are accepted by their recipients in a popular rather than a technical sense. Thus

a charge of theft may be reasonably interpreted as charging any form of criminally punishable misappropriation, and its truth may be established by proving the commission of any act of larceny or embezzlement.

It is not necessary to establish the literal truth of the precise statement made. Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance.

■ The district court's interpretation of Colorado's "Violation of Custody" statute demonstrates that even respected jurists could differ on the question whether Mr. Anderson's conduct constituted "kidnapping" under Colorado state law. However, the meaning of an allegedly defamatory statement is not determined by legal research, but "by the plain and ordinary meaning of the word." *Simonson v. United Press International, Inc.*, 654 F.2d 478, 482 (7th Cir.1981).

We note that the word "kidnapping," according to common usage, would encompass Mr. Anderson's taking of Eland without the knowledge or consent of his mother. *Webster's Third New International Dictionary* (P.B. Gove, ed. 1976) defines "kidnapping" as the "seiz[ing] and carry[ing] or tak[ing] away often wrongly." *Id.* at 1241. *Webster's* provides an illustration of an appropriate use of the word in context: "*kidnapped* the children for the afternoon." *Id.*

Moreover, in the area of child custody, the word "kidnap" appears to have assumed a non-legal connotation. Indeed, one federal appellate judge has used the word "kidnap" to describe the situation where one parent takes or conceals the child from the other parent, while acknowledging in a footnote that such conduct is not technically "kidnapping" under state law. In *Flood v. Braaten*, 727 F.2d 303, 304 n. 1 (3rd Cir.1984), the court explained:

Strictly speaking, a parent who seizes his or her child in violation of a custody decree is not guilty of "kidnapping" as defined by the criminal law in most states. Nevertheless, the literature on parental abduction frequently refers to

this conduct as "kidnapping" or "abduction." Where these terms appear in this opinion, they are used only in the non-technical sense that they have acquired in the area of child custody.

Defendants are not required to show that the allegedly defamatory statement is technically accurate, only that the "gist" or "sting" of the statement is true. In light of the non-technical meaning that the word "kidnap" has acquired in the child custody context, the description of Mr. Anderson's conduct in March 1978 as "kidnapping" was substantially true as a matter of law.

■■■ The second statement Mr. Anderson alleges is defamatory is: "[T]he father has also been described by a psychiatrist as having an extreme personality disorder bordering on being a psychopath." Record, vol. 1, at 25. Dr. John Glismann, a psychiatrist, testified during Ms. Cramlet's lawsuit against Mr. Donahue. In the case before us, the district court properly took judicial notice of this testimony in considering the motion for summary judgment. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir.1979). During Dr. Glismann's testimony, he stated that Mr. Anderson "represented a severe personality disorder.... His lack of empathy bordered on psychopathy." Record, vol. 1, at 89. Mr. Anderson does not contest the accuracy of the transcript of Dr. Glismann's testimony. He argues instead that Ms. Cramlet's letter mischaracterizes Dr. Glismann's diagnosis. When the statement in the letter is compared with Dr. Glismann's testimony, it is apparent that they are substantially the same.

■■■ The third allegedly defamatory statement in Ms. Cramlet's letter is: "Within two months of the last court hearing, the child was kidnapped and has still not been found." Record, vol. 1, at 25. Mr. Anderson does not dispute that, when he took Eland the second time, he did so in violation of a custody order entered by the Colorado state court. Nor does he dispute that he entered a plea of guilty to "Violation of Custody," Colo.Rev.Stat. § 18–3–304 (1973), in connection with this act. He

argues, however, that his guilty plea would not be admissible in this case because he has appealed to the Colorado Court of Appeals seeking to withdraw his guilty plea. The district court could properly take judicial notice of Mr. Anderson's guilty plea. *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d at 1172. Mr. Anderson's guilty plea had not been withdrawn at the time summary judgment was granted and was therefore admissible. Other evidence in the record also establishes the truth of this statement. For instance, Mr. Anderson admitted on national television that he had kidnapped his son:

Phil Donahue: You actually kidnapped your own child?

Mr. Anderson: Yes, I did.

Record, vol. 1, at 29. Mr. Anderson also stated in his letter to Phil Donahue: "I kidnapped (terminology not my own) my son." Record, vol. 1, at 26. Mr. Anderson argues that his letter to Phil Donahue and the transcript of the Phil Donahue Show were not properly supported by sworn affidavits as required by Rule 56(e) of the Federal Rules of Civil Procedure. Defendants obtained Mr. Anderson's letter to Phil Donahue in a request for production of documents. It is therefore admissible under Rule 56(c). A complete transcript of the Phil Donahue Show was admitted in evidence during the trial of Ms. Cramlet's lawsuit against Mr. Donahue. A video tape of that show was played during the trial, introduced as an exhibit, and made a part of the record. Thus, the district court could take judicial notice of its contents. "Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it." *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d at 1172. The second kidnapping is well established by these items of evidence. Thus, the third statement complained of is substantially true as a matter of law.

■■■ Finally, Mr. Anderson alleges that the following statement is defamatory: "[T]he father admitted in court that he had stated that he would kidnap the child again." Record, vol. 1, at 25. This state-

ment is based on Mr. Anderson's testimony during the 1979 divorce proceedings:

QUESTION: Mr. Anderson, have you ever threatened to steal your child away from the mother and conceal him so that the mother would not be able to see the child?

ANSWER: I would not consider it a threat. I said that is a logical alternative if my son can't be taken care of within the system.

QUESTION: Are you planning to do that?

ANSWER: No, not as long as the system takes care of my son, so that his needs are taken care, I don't intend to do that.

QUESTION: So, you would state under oath at this time that that is not what you are going to do, is take Eland and hide him so the mother would have any contact with the child?

ANSWER: My feeling is that my son needs both parents, and I would like to be able to see my son have both parents; but, I don't think one or the other should be forced not to be able to see the child. But, I will have to make that decision eventually. I would like to hope that things will be worked out so that won't be necessary.

Record, vol. 1, at 20. Mr. Anderson contends that the above-quoted testimony did not constitute a threat to kidnap his son. He argues that, in context, the testimony merely demonstrates his hope that "the child could maintain significant contact with both parents." Appellant's Brief at 14. Although Mr. Anderson's testimony does show that he hoped the court would award joint custody to both parents, it also demonstrates his clear intention to have custody of his son regardless of the trial court's decision. No reasonable jury could interpret Mr. Anderson's testimony as anything but a thinly veiled threat to kidnap his son if the court did not award him custody. Ms. Cramlet's characterization of this testimony is therefore substantially true as a matter of law.

Because we agree with the district court that the statements contained in Ms. Cramlet's letter to the *Arvada Sentinel* are substantially true, we do not decide whether Mr. Anderson is a "public figure" with respect to the child custody dispute or whether defendants acted with "actual malice." The judgment of the district court is AFFIRMED.