

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-1-1999

# We Inc v. City of Philadelphia

Precedential or Non-Precedential:

Docket 97-1958

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"We Inc v. City of Philadelphia" (1999). *1999 Decisions.* Paper 88.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/88

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 1, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-1958

WE, INC., t/a UNIVERSITY COIN LAUNDRY;
WILLIAM SCHOEPE, JR., t/a UNIVERSITY PINBALL

v.

CITY OF PHILADELPHIA, DEPARTMENT OF LICENSES
AND INSPECTIONS; RUDOLPH M. PALIAGA,
INDIVIDUALLY AND IN HIS CAPACITY AS DIRECTOR OF
BUSINESS REGULATORY ENFORCEMENT OF THE
DEPARTMENT OF LICENSES AND INSPECTIONS FOR
THE CITY OF PHILADELPHIA; UNIVERSITY OF
PENNSYLVANIA; MAUREEN RUSH, INDIVIDUALLY AND IN
HER OFFICIAL CAPACITY AS DIRECTOR OF POLICE
OPERATIONS FOR THE UNIVERSITY OF PENNSYLVANIA

University of Pennsylvania, a/k/a Trustees of the
University of Pennsylvania and Maureen Rush,
Appellants

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 97-cv-02874)
District Judge: Hon. Marvin Katz

Argued September 14, 1998

BEFORE: STAPLETON and ROTH, Circuit Judges, and
LONGOBARDI,* District Judge

(Opinion Filed April 1, 1999)
_____

*Honorable Joseph J. Longobardi, Senior United States District Judge for
the District of Delaware, sitting by designation.

        Ronald J. Shaffer (Argued)
        Stephanie Resnick
        Fox, Rothschild, O'Brien & Frankel
        2000 Market Street, 10th Floor
        Philadelphia, PA 19103
         Attorneys for Appellees

        Roger F. Cox (Argued)
        Robert A. Burke
        Jordana Cooper
        One Logan Square
        Philadelphia, PA 19103-6998
         Attorneys for Appellants

OPINION OF THE COURT

STAPLETON, Circuit Judge:

The University of Pennsylvania ("the University") appeals from an order of the District Court denying its motion for summary judgment. The University premised its summary judgment motion on a claimed immunity from liability under the Noerr-Pennington doctrine. See United Mine Workers v. Pennington, 381 U.S. 657 (1965); Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961). Before reaching the merits of the District Court's decision, we must determine whether a denial of a summary judgment motion that is predicated on Noerr-Pennington immunity constitutes a final, collateral order appealable under 28 U.S.C. S 1291. Because we conclude that such an order is not appealable under the narrow collateral order doctrine, we will dismiss for lack of jurisdiction.

I.

The appellee, We, Inc., is the owner and operator of two adjacent establishments, a coin laundry and a pinball arcade, located near the appellant University of Pennsylvania's dental school in West Philadelphia. This suit

2

arises out of a Cease Operations Order that was issued to appellee by the City of Philadelphia after the University lodged numerous complaints with the City. The University alleges that, prior to the Order's issuance, appellee's businesses were a nuisance and a threat to public safety because they were the locus of a variety of disorderly and unlawful activities, including assaults, batteries, and curfew and truancy violations. Pursuant to this concern, the University repeatedly contacted the City of Philadelphia and urged action by the City to address what it perceived to be unlawful activity associated with the businesses. The University met with City representatives regarding its concern on several occasions and provided data gathered by the University Police to support its allegations.

Without first providing notice or an opportunity for a hearing, the City issued a Cease Operations order to the businesses and posted it on the premises in the presence of University police officers. Following the order's posting, We, Inc., filed suit against the City and the University under 42 U.S.C. SS 1983 and 1985, alleging a deprivation of its property without due process. The City of Philadelphia settled the claims against them and the University moved for summary judgment, claiming immunity for at least some of its actions under the Noerr-Pennington doctrine. The District Court denied the University's motion after finding that, by participating in the posting and execution of the Cease Operations Order, the University defendants' conduct arguably went beyond the mere "petitioning" of government that the Noerr-Pennington doctrine is designed to protect. The University now appeals the District Court's denial of summary judgment.

II.

A.

Under 28 U.S.C. S 1291, appeals as of right are limited to "final decisions of the district courts." 1 The denial of a

_____

1. 28 U.S.C. S 1291 provides: "The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the
United States...."

3

motion for summary judgment ordinarily is not afinal order and, accordingly, is not normally appealable. Sacred Heart Medical Center v. Sullivan, 958 F.2d 537, 543 (3d Cir. 1992). Under the "collateral order" doctrine, however, a decision of a district court may be appealable as a"final decision" under 28 U.S.C. S 1291 if it (1)"conclusively determine[s]" the disputed question; (2)"resolve[s] an important issue completely separate" from the merits of the action; and (3) is "effectively unreviewable" on appeal from a final judgment. Coopers & Lybrand v. Livesay, 437 U.S. 463, 468-69 (1978). If the order at issue fails to satisfy any one of these requirements, it is not an appealable collateral order. See Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 276 (1988); Christy v. Horn 115 F.3d 201, 204 (3d Cir. 1997).

Since Coopers & Lybrand, the Supreme Court has repeatedly referred to the collateral order doctrine as "narrow," described the conditions for its applications as "stringent" and urged that it "should stay that way and never be allowed to swallow the general rule." See e.g., Digital Equip. Corp. v. Desktop Direct Inc., 511 U.S. 863, 868 (1994); Midland Asphalt Corp., v. United States, 489 U.S. 794, 799 (1989). We have followed this admonition and consistently construed the collateral order exception narrowly "lest the exception swallow up the salutary general rule that only final orders be appealed." Yakowicz v. Pennsylvania, 683 F.2d 778, 783 n.10 (3d Cir. 1982); see also Transtech Indus., Inc. v. A & Z Septic Clean, 5 F.3d 51 (3d Cir. 1993). Moreover, strict construction of the collateral order doctrine is consistent with the longstanding congressional policy against piecemeal appeals that underlies the final judgment rule. See Lusardi v. Xerox Corp., 747 F.2d 174, 177 (3d Cir. 1984).

To guard against the temptation to expand the doctrine's reach, the Supreme Court has instructed that "the issue of appealability under S 1291 is to be determined for the entire category to which a claim belongs." Desktop Direct Inc., 511 U.S. at 868; Christy, 115 F.3d at 204. This approach reflects the Court's insistence that thefinality requirement of S 1291 must not be reduced to a case-by-case determination, see Richardson-Merrill Inc. v. Koller,

4

472 U.S. 424, 439 (1985), and that courts consider appealability "without regard to the chance that the litigation at hand might be speeded, or a particular injustice averted, by a prompt appellate court decision." Desktop Direct, 511 U.S. at 868 (citation omitted). Thus, in this case, we consider whether an order denying a claim of immunity under the Noerr-Pennington doctrine is an immediately appealable collateral order.

B.

The University contends that the denial of its claim of immunity under the Noerr-Pennington doctrine is immediately appealable under the collateral order doctrine. It likens Noerr-Pennington immunity to the absolute and qualified immunity enjoyed by public officials, the denial of which is immediately appealable under that doctrine. See Mitchell v. Forsythe, 472 U.S. 511, 526 (1985); Nixon v. Fitzgerald, 457 U.S. 731, 743 (1982). It is true, as the University stresses, that a denial of a motion for summary judgment based on Noerr-Pennington immunity, like the denial of a summary judgment based on official immunity, ordinarily will conclusively determine an important issue unrelated to the merits of the case. We therefore focus our attention on the third requirement of the collateral order doctrine -- that the District Court's decision be effectively unreviewable on appeal from the final judgment.

In holding that an order denying qualified immunity to a public official is "effectively unreviewable on appeal from final judgment," the Supreme Court reasoned in Mitchell v. Forsythe that an "essential attribute" of qualified immunity is "an entitlement not to stand trial under certain circumstances," and thus qualified immunity entails "an immunity from suit rather than a mere defense to liability." Mitchell, 472 U.S. at 526, 530 (emphasis in original). As with absolute immunity, this entitlement "is effectively lost if a case is erroneously permitted to go to trial." Id. at 526. Since Mitchell, denials of a state's Eleventh Amendment immunity from suit in a federal court similarly have been held to be immediately appealable. See Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, 506 U.S. 139, 146 (1993) ("the very object and purpose of the 11th

5

Amendment [are] to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties") (citation omitted).

The Supreme Court has repeatedly urged courts to employ caution and restraint, however, in reviewing claims of a right not to stand trial. Not all defenses that warrant a pretrial dismissal entail a right not to stand trial. As the Supreme Court has explained, there is "a crucial distinction between a right not to be tried and a right whose remedy requires the dismissal of charges." United States v. Hollywood Motor Car Co., 458 U.S. 263, 269 (1982). In Van Cauwenberghe v. Biard, 486 U.S. 517, 524-25 (1988), the Court noted that "[b]ecause of the important interests furthered by the final-judgment rule and the ease with which certain pretrial claims for dismissal may be alleged to entail the right not to stand trial, we should examine the nature of the right asserted with special care to determine whether an essential aspect of the claim is the right to be free of the burdens of a trial."

In Desktop Direct, the Court was even more emphatic in insisting that efforts to obviate S 1291's final judgment rule by claiming an immunity from suit should be critically assessed. "We have, after all, acknowledged that virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a"right not to stand trial. . . . Thus, precisely because candor forces us to acknowledge that there is no single, `obviously correct way to characterize' an asserted right, we have held that S 1291 requires courts of appeals to view claims of a `right not to be tried' with skepticism, if not a jaundiced eye." Desktop Direct, 511 U.S. at 873.

Thus, as the Supreme Court has framed it, "[t]he critical question, following Mitchell, is whether `the essence' of the claimed right is a right not to stand trial." Van Cauwenberghe, 486 U.S. at 524. This Court has not yet addressed this critical question in the context of a claim to Noerr-Pennington immunity. We now proceed to do so, based on the nature and extent of protection afforded by Noerr-Pennington immunity and the Supreme Court's general admonition that claims to immunity from suit be critically assessed. Because we conclude that the Noerr-

6

Pennington doctrine does not provide an "immunity from suit" but rather only a defense against liability, we hold that a denial of a summary judgment motion predicated on Noerr–Pennington "immunity" is not effectively unreviewable on appeal from a final judgment.

III.

The Noerr–Pennington doctrine originated in the anti-trust context as the proposition that "joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition. Such conduct is not illegal, either standing alone or as part of a broader scheme itself violative of the Sherman Act." See United Mine Workers v. Pennington, 381 U.S. 657, 670 (1965); Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961). The Supreme Court has predicated this antitrust "immunity" on two principles: first, the First Amendment right of citizens to petition the government and participate in the legitimate processes of government, and second, a statutory interpretation of the Sherman Act under which Congress is viewed as not intending the Act to reach the political process. As Noerr explained, "[t]o hold that the government retains the power to act in this representative capacity and yet hold, at the same time, that the people cannot freely inform the government of their wishes would impute to the Sherman Act a purpose to regulate, not business activity, but political activity, a purpose which would have no basis whatever in the legislative history of that Act. Secondly, and of at least equal significance, such a construction of the Sherman Act would raise important constitutional questions. The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms." Noerr, 365 U.S. at 137–38 (footnote omitted); see also City of Columbia v. Omni Outdoor Adver., Inc., 499 U.S. 365, 380 (1991) ("The [Noerr–Pennington] doctrine .. . rests ultimately upon a recognition that the antitrust laws, `tailored as they are for the business world, are not at all appropriate for application in the political arena.' ") (quoting Noerr, 365 U.S. at 141).

7

This court, along with other courts, has by analogy extended the Noerr-Pennington doctrine to offer protection to citizens' petitioning activities in contexts outside the anti-trust area as well. For example, in Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155 (3d Cir. 1988), we found that the Noerr-Pennington doctrine protected individuals from tort liability for their actions in petitioning the government to shut down a nursing home that was operating in violation of applicable regulations. Citing to the Noerr-Pennington doctrine in Brownsville, we affirmed an order granting summary judgment for the defendants, noting that:

> "The rule that liability cannot be imposed for damage caused by inducing legislative, administrative, or judicial action is applicable here. The conduct on which this suit is based is protected by the firmly rooted principle, endemic to a democratic government, that enactment of and adherence to law is the responsibility of all. The problem is not too much citizen involvement but too little. Thus, we hold that as a matter of law, defendants' actions in calling Brownsville's violations to the attention of state and federal authorities and eliciting public interest cannot serve as the basis of tort liability."

Id. at 160.

Thus, the purpose of Noerr-Pennington as applied in areas outside the antitrust field is the protection of the right to petition. Immunity from liability is necessary so as not to chill the exercise of that right. The question presented by this case is whether immunity from the burden of suit is also necessary to avoid an unconstitutional chill of the right to petition.

It is helpful at the outset to note that the Petition Clause of the First Amendment neither enjoys "special First Amendment status" nor confers an "absolute immunity" for privilege. McDonald v. Smith, 472 U.S. 479, 484-85 (1985). As the Court held in McDonald, the Petition Clause is on a par with the freedoms to speak, publish, and assemble. It follows that the protection afforded by Noerr-Pennington is no more absolute or extensive than that provided by other

First Amendment guarantees. We find this helpful because relevant jurisprudence concerning burdens of the right to freedom of speech is more fully developed than that concerning the right to petition.

Citizens who exercise their First Amendment rights of free speech and free press enjoy significant protection from defamation liability in order to prevent undue chill on the exercise of those rights. See, e.g., New York Times v. Sullivan, 376 U.S. 254 (1964) (liability to public officials); Curtis Publishing Co. v. Butts, 388 U.S. 130 (1967) (liability to public figures); Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974) (liability to private individuals). The courts have never recognized, however, that an immunity from suit was necessary to prevent an unacceptable chill of those First Amendment rights. Indeed, the law appears to be to the contrary.

In Calder v. Jones, 465 U.S. 783 (1984), respondent actress Shirley Jones claimed that she had been libeled in an article written by petitioners in Florida and published in a national magazine with a large circulation in California where she resided. Petitioners were served in Florida with process issued by a California court, and the issue was whether that court could exercise personal jurisdiction over petitioners. Although the intermediate appellate court in California concluded that petitioners' contacts with California would ordinarily be sufficient, it held that jurisdiction could not be exercised "because of the potential `chilling effect' on reporters and editors which would result from requiring them to appear in remote jurisdictions to answer for the content of articles upon which they worked." Id. at 786.

The Supreme Court disagreed. While in no way disparaging petitioners' First Amendment rights, the Court found that the burden of litigating in a distant forum was insufficient to constitute an unacceptable chill of the journalists' exercise of such rights. As Chief Justice Rehnquist, writing for a unanimous court, put it:

> . . . [t]he potential chill on protected First Amendment activity stemming from libel and defamation actions is already taken into account in the constitutional

9

limitations in the substantive law governing such suits. See New York Times Co. v. Sullivan, 376 U.S. 254 (1964); Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974). To reintroduce those concerns at the jurisdictional stage would be a form of double counting. We have already declined in other contexts to grant special procedural protections to defendants in libel and defamation actions in addition to the constitutional protections embodied in the substantive laws. See, e.g., Herbert v. Lando, 441 U.S. 153 (1979) (no First Amendment privilege bars inquiry into editorial process). See also Hutchinson v. Proxmire, 443 U.S. 111, 120, n.9 (1979) (implying that no special rules apply for summary judgment).

Id. at 790-91. If safeguarding the First Amendment rights asserted in Calder did not also require protecting against the burden of litigating in a distant forum, it is unlikely the Supreme Court will find that the First Amendment protection Noerr-Pennington provides against liability for petitioning also includes an across-the-board immunity from suit.

This court as well has rejected the notion that the burden of litigation poses an unacceptable threat to First Amendment values. At one point, the Fourth, Fifth, Eighth and D.C. Courts of Appeals took the position that summary judgment should enjoy a special status in defamation cases because "[t]he threat of being put to the defense of a lawsuit . . . may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself." Washington Post Co. v. Keogh, 365 F.2d 965, 968 (D.C. Cir. 1966); see Anderson v. Cramlet, 789 F.2d 840, 843 (10th Cir. 1986) (collecting cases). The Supreme Court "express[ed] some doubt" about such an approach in Hutchinson v. Proxmire, 443 U.S. 111, 120 n.9 (1979), however, and this court flatly rejected it in Lavin v. New York News, Inc., 757 F.2d 1416, 1419 (3d Cir. 1985) (footnote omitted):

In this case, the bench opinion of the district judge can reasonably be interpreted as expressing the view that, because of First Amendment concerns, summary judgment is more easily obtainable by a media

10

defendant in a defamation case than by defendants in other cases. We reject that approach. A substantial dispute of material fact does not disappear merely because a media defendant is being sued, or because a public official is the plaintiff; and plaintiff 's right to a jury trial is entitled to no less respect.

Accord Clark v. American Broadcasting Co., Inc. , 684 F.2d 1208, 1212 (6th Cir. 1982) (rejecting the argument that different considerations apply to summary judgment motions in the defamation context); Yiamouyiannis v. Consumers Union of United States, Inc., 619 F.2d 932, 939–40 (2d Cir. 1980) (same); Anderson, 789 F.2d at 842–43 (declining to apply a preference either for or against summary judgment in defamation cases).

If, as McDonald requires, the right to petition enjoys no special status among First Amendment rights, these authorities suggest that Noerr–Pennington immunity provides only a defense to liability, not an immunity from suit. Under the collateral order doctrine, therefore, the denial of a motion for summary judgment predicated on Noerr–Pennington is not a collateral order subject to immediate review. The only other court of appeals to have considered this issue reached a similar conclusion. In Segni v. Commercial Office of Spain, 816 F.2d 344 (7th Cir. 1987), the defendants moved to dismiss a civil rights complaint on the ground that "their conduct enjoy[ed] an `absolute immunity' by virtue of the guarantee in the First Amendment of the right to petition government for redress." Id. at 345. The District Court denied the motion and the defendants appealed. The Court of Appeals acknowledged that "[w]here the right asserted by way of defense to a lawsuit is (or includes) a right not to bear the burden of suit itself, regardless of outcome, the denial of that right, as by denying a motion to dismiss the suit, is appealable immediately by virtue of the collateral order doctrine." Id. at 345. It nevertheless dismissed the appeal for want of jurisdiction, observing:

It's quite a leap, though, to say that anytime a motion to dismiss on First Amendment grounds is denied, the defendant can appeal the denial, on the theory that the failure to dismiss the suit at the earliest opportunity is

11

> itself an infringement of the defendant's First
> Amendment rights.

Id.

The Segni court distinguished Noerr-Pennington immunity from "state action" doctrine under Parker v. Brown, 317 U.S. 341 (1943), on the ground that the latter doctrine "had been interpreted to create an immunity from suit and not just from judgment -- to spare state officials the burdens and uncertainties of the litigation itself as well as the cost of an adverse judgment." Id. at 346. The possibility that the "burdens of suit . . . might deter [public officials] from vigorous execution of their office [was] a consideration missing in the case of the private defendant." Id.

We agree with the conclusion reached by the Segni court and with its explanation of the distinction between cases involving immunity for a public official and those involving immunity for a private defendant. Moreover, we have been unable to find any case holding that the burden of litigation on a private defendant justifies an immunity from suit as well as a defense to liability.

In re: Asbestos School Litigation, 46 F.3d 1284 (3d Cir. 1994), a case heavily relied upon by the University, seems to us to support our conclusion. In that case, we considered a request for a writ of mandamus that would require the District Court to dismiss the claim against the petitioner, Pfizer, Inc. The underlying suit was a nationwide class action by 30,000 school districts against Pfizer and other former manufacturers of asbestos-containing building products. The plaintiffs claimed that Pfizer, by associating with a trade association, Safe Building Alliance ("SBA"), had joined an ongoing civil conspiracy and had thus become liable for all of the other defendants' prior tortious conduct. After the District Court denied Pfizer's motion for summary judgment, Pfizer petitioned this court, contending that the burden of further litigation in the District Court would chill its exercise of its First Amendment right of association.

We first held that Pfizer had a "clear and indisputable" right to the issuance of the writ because the District Court's decision was "squarely inconsistent" with the Supreme Court's holding in Claiborne Hardware that conspiracy

12

liability cannot, consistent with the First Amendment, be imposed based upon mere association. Id. at 1289; NAACP v. Claiborne Hardware, 458 U.S. 886, 918-20 (1982). We then turned to the question of whether Pfizer had other adequate means to attain the desired relief, such as by waiting to appeal from the final judgment. We did not, as the University suggests, establish a rule that anyone with First Amendment protection from liability was entitled to an immediate appeal from the denial of a motion for summary judgment based on that protection. To the contrary, we issued the writ only after making a specific finding that waiting for an appeal from a final judgment would cause Pfizer irreparable injury throughout the remainder of extensive proceedings before the trial court. We found that "[w]hile the district court's ruling did not directly prohibit Pfizer from associating with the SBA during the remainder of the district court proceedings, there [could] be little question that in reality the district court ruling[would] powerfully inhibit Pfizer from doing so." In re: Asbestos, 46 F.3d at 1295. Pfizer had a need "to engage, by means of the SBA, in a `public dialogue on the important issue of safety of in-place asbestos containing building products,' and Pfizer would suffer irreparable harm if it were deprived of the opportunity to engage in such constitutionally protected activity." Id. at 1294-95 (footnote omitted). The fact that we found it necessary to find a specific and continuing chill on Pfizer supports the conclusion that the generalized chill of anticipated litigation on others who wish to petition is, alone, insufficient to overcome the strong policy against piecemeal appeals. Unlike Pfizer, the University has pointed to no specific continuing chill on anticipated petitioning, but rather only to the burden of defending the remainder of this litigation.[2]

_____

2. This court's decision in San Fillipo v. Bongiovanni, 30 F.3d 424 (3d Cir. 1994), is also consistent with the result that we reach. In San Fillipo, this court held that a government employee is protected against retaliation under the Petition Clause for havingfiled suit against his employer on a matter of purely private concern. Although the employee would have had no First Amendment immunity against employer discipline if his expressive conduct had constituted speech, Connick v. Myers, 461 U.S. 138, 147 (1983), the court held that Connick's "public

13

In sum, the Noerr-Pennington doctrine provides immunity from liability for certain types of constitutionally protected activity. While of course "there is value -- to all but the most unusual litigant -- in triumphing before trial," Van Cauwenberghe, 486 U.S. at 524, the interest protected by Noerr-Pennington can be fully vindicated after trial. Without diminishing the importance of the First Amendment right to petition that is protected by the Noerr-Pennington doctrine, we hold that a right not to be burdened with a trial is simply not an aspect of this protection.

Because we conclude that the Noerr-Pennington doctrine does not confer a right not to stand trial, but rather provides only a defense against liability for certain conduct, we find that an order denying Noerr-Pennington immunity is effectively reviewable on appeal from a final judgment, and thus is not an appealable collateral order.

IV.

We will dismiss the defendant's appeal from the district court's order denying summary judgment for lack of appellate jurisdiction.

_____

concern" limit on the right of free speech did not apply to the plaintiff's exercise of his right to petition in this context. Id. at 443. The justification behind the "public concern" limitation on the Free Speech Clause protection of public employees was found inapplicable in the context of disciplinary action taken in retaliation for the employee's availing himself of a mechanism formally adopted by his government employer for the redress of grievances against the employer. Although the San Fillipo court found that the Petition Clause provided broader protection than the right of free speech, both its holding and its reasoning were explicitly confined to the public employment/retaliatory discharge context. See id. at 438 ("the scope of the petition right depends upon the context in which the right is exercised"); id. at 438 n.17 (rejecting as inapposite various cases arising outside the public employment/retaliatory discharge context); id. at 441-42 (finding that the government's adoption of a formal redress process provides an "independent reason" for essentially "affording special treatment to speech found in a grievance" or similar petition). Thus, nothing in San Fillipo contravenes our conclusion that, like other First Amendment rights, the right to petition protected by Noerr-Pennington immunity conveys an immunity from liability, but not from suit.

14

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit