Lawrence v. Altice USA

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of January, two thousand twenty-one.

PRESENT:
>**DEBRA ANN LIVINGSTON,**
>*Chief Judge,*
>**MICHAEL H. PARK,**
>**STEVEN J. MENASHI,**
>*Circuit Judges.*

_____

JAMES LAWRENCE,

>*Plaintiff-Appellant,*

> v.                                                                                     20-393

ALTICE USA,

>*Defendant-Appellee.*

_____

| | |
|---|---|
| **FOR PLAINTIFF-APPELLANT:** | JAMES LAWRENCE, *pro se*, Westport, CT. |
| **FOR DEFENDANT-APPELLEE:** | KATHERINE BOLGER, Davis Wright Tremaine, LLP, New York, NY; Lisa Beth Zycherman, Davis Wright |

Tremaine, LLP, Washington, DC; Timothy G. Ronan, Pullcom & Comley, Bridgeport, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Underhill, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant James Lawrence ("Lawrence"), proceeding *pro se*, filed an amended complaint against Altice USA ("Altice") for libel and defamation. He argued that, after he was arrested for breaching the peace, one of Altice's subsidiaries—News 12 Connecticut ("News 12")—falsely stated that he was facing charges for "stalking" in its television and online reporting. Lawrence had been arrested for allegedly following a woman around a grocery store and out to her car. News 12 covered this incident as well as several similar incidents involving Lawrence discovered by police after further investigation. Lawrence also alleged a separate claim for intentional infliction of emotional distress. The district court granted summary judgment in favor of Altice, finding that News 12's reports were substantially true and not defamatory, and that his emotional distress claim was derivative of the defamation claim. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review a grant of summary judgment *de novo*, "resolving all ambiguities and drawing all permissible inferences in favor of the non-moving party." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 83 (2d Cir. 2020). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

Defamation claims in Connecticut are "rooted in the state common law" but are "heavily influenced by the minimum standards required by the First Amendment." *Gleason v. Smolinski*, 319 Conn. 394, 430 (2015) (quotation marks and alteration omitted). To prevail on a defamation claim in Connecticut, a plaintiff must show that (1) the defendant published a defamatory statement that (2) identified the plaintiff to a third person, (3) was published to a third person, and (4) led to the plaintiff's reputation suffering injury. *Id.* A statement is defamatory when it "tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* at 431 (quotation marks omitted). Of course, "for a claim of defamation to be actionable, the statement must be false." *Id.* (quotation marks omitted). While truth is an affirmative defense to defamation under the common law, *id.*, under the First Amendment, private-figure plaintiffs such as Lawrence have the burden of proving falsity against media defendants, *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986).

Media defendants do not incur liability for reporting that is "substantially true" even if that reporting does not satisfy "[a] fussy insistence upon literal accuracy." *Strada v. Conn. Newspapers, Inc.*, 193 Conn. 313, 321–23 (1984); *see also Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516 (1991) ("The common law of libel . . . overlooks minor inaccuracies and concentrates upon substantial truth."). In determining substantial truth, the "issue is whether the libel, as published, would have a different effect on the reader than the pleaded truth would have produced." *Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 113 (1982). A defendant's statement is substantially true when "the main charge, or gist, of the libel [or defamation] is true" and, consequently, "minor errors that do not change a reader's perception of the statement do not make the statement actionable." *Strada*, 193 Conn. at 322 (quotation marks

3

omitted). "Particular words or statements must be viewed, not in isolation, but in terms of the context of the entire communication." *Woodcock v. Journal Publ'g Co.*, 230 Conn. 525, 554 (1994) (Berdon, J., concurring); *see also Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (viewing newspaper's use of the term "blackmail" in context to gauge how a "reader . . . [would have] understood exactly what was meant" when assessing libel claim of a plaintiff never charged with blackmail).

Here, the district court properly granted summary judgment because the evidence showed that News 12 accurately reported on what police said regarding Lawrence's documented history of following women in a harassing manner. The totality of Lawrence's conduct—including on November 5th and numerous past instances—met the common definition of "stalking": "to pursue quarry or prey stealthily," or "to pursue obsessively to the point of harassment." *Stalk*, Merriam-Webster's Online Dictionary (accessed Nov. 9, 2020). As described in the arrest warrant application on which News 12 based its reporting, Lawrence was accused on November 5, 2017 of following a woman inside a grocery store and out to her car in the parking lot, where he stood staring at her. This behavior was similar to his behavior in ten other reported incidents since 2002 in which he followed women in public places causing them to call the police because they felt uncomfortable. Therefore, because the November 5th incident and the other incidents mentioned in the arrest warrant involved Lawrence's repeated, unsolicited, and frightening behavior toward women, they were fairly described as stalking.

Lawrence argues that News 12's reporting was defamatory because he was arrested for breaching the peace on November 5 but not for stalking, and his past conduct did not satisfy the common definition of stalking. Lawrence is correct that the police never charged him with

4

stalking in Connecticut. Thus, News 12's statement that Lawrence was "facing charges for allegedly stalking," its graphics reading "STALKING ARREST" and "Stalking Charges," and the headline of both its articles, "Police: Westport man charged with stalking women," were technically inaccurate. Indeed, the district court acknowledged these inaccuracies.

However, Lawrence's argument that these inaccuracies were "clearly defamation" is unavailing. A media defendant's characterization of criminal allegations against a private plaintiff is substantially true if the characterization comports with the common understanding of the terms employed. *See, e.g.*, *Anderson v. Cramlet*, 789 F.2d 840, 844 (10th Cir. 1986) (affirming summary judgment for a media defendant in a defamation case when a letter to the editor described behavior as "kidnapping" because, "in the popular sense of the word," the letter "truthfully and accurately described" the conduct); *Simonson v. United Press Int'l, Inc.*, 654 F.2d 478, 481–82 (7th Cir. 1981) (same result when media defendant used the term "rape" even though the crime was second-degree sexual assault). Here, although "stalking" and "breach of the peace" are distinct crimes under Connecticut law,[1] News 12's use of the term "stalking" would not have affected average readers' and viewers' perceptions of Lawrence because the gist of its reporting established that Lawrence's behavior met the common definition of stalking. Moreover, News 12's television reports and internet articles covered not just the November 5th incident, but several

---

[1] *Compare* Conn. Gen. Stat. § 53a-181e(a) (third-degree stalking) ("A person is guilty of stalking in the third degree when such person recklessly causes another person to reasonably (1) fear for his or her physical safety, or (2) suffer emotional distress. . . by wilfully and repeatedly following or lying in wait for such other person."), *with id*. § 53a-181(a) (second-degree breach of peace) ("A person is guilty of breach of peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: Engages in . . . threatening behavior in a public place.").

instances of Lawrence's similar conduct spanning over a decade. The reports summarized what the police said regarding the November 5th incident, Lawrence's charges for similar behavior in California (where he was actually charged with stalking), and his outstanding protective order. The reports included segments mentioning multiple "women" and nearly all used the phrase "several women," though only one woman was involved in the November 5th incident. Both internet articles and one television report explicitly mentioned the charge of breach of peace.

Even though the graphics in the fourth and final television report and the headlines of both internet articles gave the impression that Lawrence had been charged with stalking, the contents of those reports compensated for these inaccuracies by accurately describing Lawrence's charged conduct. *See Woodcock*, 230 Conn. at 554 ("Inaccurate headlines are not libelous if they are correctly clarified by the text of an article.") (Berdon, J., concurring) (citing *Contemporary Mission, Inc. v. N.Y. Times Co.*, 842 F.2d 612, 624–25 (2d Cir. 1988)). Against the backdrop of the fourth television report's headlines and graphics, News 12 accurately reported that police said Lawrence had a "history of following women around the stores and then out to their cars" and that he had "been involved in 10 cases." It also included an anonymous complainant from a previous incident who accused Lawrence of preying on women and commented on Lawrence's California charges and outstanding protective order. Similarly, the News 12 articles accurately reported that Lawrence was charged with breaching the peace for the November 5th incident and explained that the arrest warrant application mentioned ten similar incidents. The first article mentioned the anonymous complainant, Lawrence's California charges, and the outstanding protective order. In addition to this information, the second article also included the anonymous complainant's preying accusation. In short, the "main charge, or gist" of News 12's reports was that Lawrence's

6

behavior in the November 5th incident was consistent with his history of similar behavior, thus fairly summarizing what the police stated in the arrest warrant affidavit. *Goodrich*, 188 Conn. at 113.

Overall, when viewed in context and from the vantage point of the average audience member, *Greenbelt Coop. Publ'g Ass'n*, 398 U.S. at 14, News 12's reporting on the information it obtained from the police about Lawrence was "substantially true" and not defamatory. *Strada*, 193 Conn. at 321–22. Accordingly, the district court properly granted summary judgment to Altice. *See Mercer v. Cosley*, 955 A.2d 550, 564 (Conn. App. 2008) ("[W]here the inaccuracies are of a technical nature that conveyed the same meaning as the true facts would have in the eyes of the average reader, summary judgment may be appropriate.").

Because Lawrence raises arguments concerning the dismissal of his emotional distress claim for the first time in his reply brief, we need not consider them. *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief."); *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996) (applying this rule to a *pro se* litigant).

In any event, the emotional distress claim is barred by the First Amendment and fails as a matter of law. "Speech on matters of public concern is at the heart of the First Amendment's protection." *Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (alteration and internal quotation marks omitted). Accordingly, "where discussion of public affairs is concerned," substantially truthful speech "may not be the subject of either civil or criminal sanctions." *Garrison v. Louisiana*, 379

7

U.S. 64, 74 (1964). Lawrence's claim for emotional distress is therefore barred by the First Amendment.

Even if it were not, Lawrence's emotional distress claim would fail as a matter of law. To prevail in an action for intentional infliction of emotional distress, the plaintiff must show: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *DeLaurentis v. City of New Haven*, 220 Conn. 225, 266-67 (1991). Conduct is "extreme and outrageous" when "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *DeLeon v. Little*, 981 F. Supp. 728, 737 (D. Conn. 1997). News 12's substantially true reports concerning Lawrence's conduct cannot be so characterized. *See id.* ("Whether conduct is extreme and outrageous is a determination for th[e] court to make in the first instance."). Accordingly, Lawrence cannot prevail on his claim for intentional infliction of emotional distress.

We have considered Lawrence's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8